**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JENNY RUBIN *et al.*, | : | | |
| Plaintiffs, | : | Civil Action No.: | 02-0975 (RMU) |
| v. | : | Document No.: | 7 |
| HAMAS - ISLAMIC RESISTANCE MOVEMENT (a.k.a. "Harakat Al-Muqawama Al- Islamiyya"), | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING THE PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

## I. INTRODUCTION

This case comes before the court on the plaintiffs' motion for default judgment. The plaintiffs, American citizens injured in a suicide bombing carried out by the defendant, and the victims' family members, seek damages for personal injury and other related torts pursuant to the Anti-Terrorism Act, 18 U.S.C. §§ 2331 *et seq*. Because the plaintiffs demonstrate personal and subject matter jurisdiction, the court grants the plaintiffs' motion.

## II. BACKGROUND[1]

### A. Factual Background

On September 4, 1997, terrorists acting on behalf of the defendant detonated several bombs at the Ben Yehuda pedestrian mall in downtown Jerusalem, Israel. Compl. ¶ 14.

[1] For a more detailed factual background, see *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003).

Plaintiffs Jenny Rubin, Daniel Miller, Abraham Mendelson, Stuart Hersh and Noam Rozenman were present at the bombing and suffered serious injuries. *Id*. ¶¶ 4, 6-8, 10. The remaining plaintiffs are relatives of the bombing victims. *Id*. ¶¶ 5, 9, 11-12.

**B. Procedural History**

On May 17, 2002, the plaintiffs filed a five-count complaint in this court seeking damages for international terrorism pursuant to 18 U.S.C. § 2333 and the common-law torts of battery, assault, loss of consortium and solatium, and intentional infliction of emotional distress. *Id*. ¶¶ 20-49. The defendant failed to appear, and on January 10, 2003, the clerk of the court entered default against the defendant. On December 11, 2003, the plaintiffs moved for default judgment. To date the defendant has neither appeared nor filed an opposition to the plaintiffs' motion. The court now turns to the plaintiffs' motion.

**III. ANALYSIS**

**A. Legal Standard for Entry of Default Judgment under Rule 55(b)(2)**

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. FED. R. CIV. P. 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it

seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party[, as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id*. at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty). The court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). To fix the amount, the court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping*

*Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

**B. Subject-Matter and Personal Jurisdiction**

The applicable statue to determine subject matter jurisdiction is the Anti-Terrorism Act, which provides that:

> Any national of the United States injured in his or her person, property or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs may sue therefore in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333. Accordingly, this court has subject-matter jurisdiction under the plain language of the statute. 18 U.S.C. § 2333.

Personal jurisdiction in this case arises under Federal Rule of Civil Procedure 4(k)(2), which provides that:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

FED R. CIV. PRO. 4(k)(2). Thus, a court may establish personal jurisdiction over a foreign defendant pursuant to Rule 4(k)(2) when "the defendant has minimum contacts with the United States as a whole but does not have sufficient contacts with a single state to satisfy the long-arm statute of such a state. *In re Vitamins Antitrust Litigation*, 120 F. Supp. 2d 58, 72 (D.D.C. 2000).

In the instant case, the plaintiff presents detailed testimony from a Middle East terrorism expert and a Federal Bureau of Investigation agent describing the defendant's fundraising, operational planning, recruitment, propaganda, public relations, money laundering and investment activities in the United States. Pls.' Mot. For Default J. ("Pls.' Mot.") Ex. F. Based

on this uncontradicted evidence, the court concludes that the plaintiffs have met their burden in showing that the defendant has minimum contacts with the United States. *Accord Estates of Ungar Ex. Rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 250-58 (D.R.I. 2003) (describing widespread contacts between HAMAS and the United States and concluding that the court had personal jurisdiction over HAMAS). Next, the plaintiff asserts that the defendant is not subject to the jurisdiction of any state court. Pls.' Mot. at 6. Importantly, to invoke Rule 4(k(2), the plaintiffs need only certify that "to their knowledge, the defendant is not subject to jurisdiction in any one state." *In re Vitamins Antitrust Litigation*, 120 F. Supp. 2d at 72. The burden then shifts to the defendant to produce evidence that demonstrates that there is a specific state where it would be subject to suit. *United States v. Swiss American Bank*, 191 F.3d 30, 41-42 (1st Cir. 1999). Here, the plaintiff states that the defendant is not subject to the jurisdiction of any state and the defendant has defaulted on its burden of production. Accordingly, the court may, and does, infer that personal jurisdiction over the defendant is not available in any state court. *Id*.

**C. Damages**

Because the plaintiff has presented a prima facie case to which the defendant has been "essentially unresponsive," the plaintiffs have established the defendant's liability for the bombing. *Jackson v. Beech*, 636 F.2d at 835; *Adkins*,180 F. Supp. 2d at 17. The court must now determine the sum to be awarded. As an initial matter, courts have recognized that a section 2333 claim "extends civil liability for acts of international terrorism to the full reaches of traditional tort law." *Boim v. Quaric Literacy Institute*, 291 F.3d 1000, 1010 (7th Cir. 2002); *accord Ungar*, 304 F. Supp. 2d at 264. This means that "the full range of damages" are available

to the plaintiffs, which includes "loss of companionship, society, and mental anguish experienced by the victim's surviving family members." *Ungar*. 304 F. Supp. 2d at 265, 267.

As noted, the court may, but is not required to, conduct a hearing to fix the sum of damages. The court, however, has already heard extensive evidence and made detailed findings of fact regarding the plaintiffs' damages in a related case arising out of the same facts at issue here. *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 274-79 (D.D.C. 2003). The plaintiffs indicate that any evidence that they would present in the instant case would be identical to the evidence presented in *Campuzano* and that a second hearing "would be a massive waste of judicial resources, and would needlessly force the plaintiffs to relive and reiterate the emotionally excruciating testimony previously given by them." Pls.' Mot. at 11. The court agrees. Accordingly, the court uses its previous findings of fact from *Campuzano* to calculate appropriate damages as follows:[2]

| | | |
|---|---|---|
| Jenny Rubin | $7,000,000 | trebled to $21,000,000 |
| Daniel Miller | $12,000,000 | trebled to $36,000,000 |
| Abraham Mendelson | $12,000,000 | trebled to $36,000,000 |
| Stuart Hersh | $12,000,000 | trebled to $36,000,000 |
| Noam Rozenman | $15,000,000 | trebled to $45,000,000 |
| Deborah Rubin | $2,500,000 | trebled to $7,500,000 |
| Renay Frym | $6,000,000 | trebled to $18,000,000 |
| Elena Rozenman | $2,500,000 | trebled to $7,500,000 |

[2] The court trebles the compensatory damages determined in *Campuzano* pursuant to the Anti-Terrorism Act's provision for recovery of "threefold the damages[.]" 18 U.S.C. § 2333.

| Tzvi Rozenman | $2,500,000 | trebled to $7,500,000 |
| --- | --- | --- |

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for default judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this _____ day of September, 2004.

RICARDO M. URBINA
United States District Judge